**<u>Exhibit A</u>**

**Bidding Procedures Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| AMERICAN VIRTUAL CLOUD TECHNOLOGIES, INC., *et al.*, | Case No. 23-10020 (MFW) |
| Debtors.[1] | (Jointly Administered) |

**ORDER (A) AUTHORIZING AND APPROVING BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF THE DEBTORS' ASSETS, (B) AUTHORIZING THE DEBTORS TO ENTER INTO A STALKING HORSE AGREEMENT AND PROVIDE BID PROTECTIONS THEREUNDER, (C) AUTHORIZING AND APPROVING PROCEDURES RELATED TO THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE, (D) SCHEDULING AUCTION AND SALE APPROVAL HEARING, (E) APPROVING THE FORM AND MANNER OF THE NOTICE OF THE SALE HEARING, AND (F) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] filed by the above-captioned debtors and debtors in possession (the "**Debtors**") for entry of an order (this "**Order**"), (i) authorizing and approving the bidding procedures attached hereto as **Exhibit 1** (the "**Bidding Procedures**"), (ii) authorizing the Debtors to select a stalking Horse bidder and provide bid protections; (iii) authorizing and approving procedures for the assumption and assignment of executory contracts and unexpired leases in connection with the sale, (iv) scheduling an auction and sale approval hearing (iv) approving the form and manner of notice of the sale hearing; and (v) granting related relief, all as further described in the Motion; and upon consideration of the First Day Declaration, and the record of these chapter 11 cases; and this Court having found that (a) this Court has jurisdiction over

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: American Virtual Cloud Technologies, Inc. (2421), AVCtechnologies USA, Inc. (8886), and Kandy Communications LLC (5853). Each Debtor's corporate headquarters is 1720 Peachtree Road, Suite 629, Atlanta, Georgia 30309.

[2] Capitalized terms used but not otherwise defined in this Order shall have the meanings given to them in the Motion or Bidding Procedures, as applicable.

the Debtors, their estates, property of their estates and to consider the Motion and the relief requested

therein under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the*

*United States District Court for the District of Delaware,* dated February 29, 2012, (b) this Court

may enter a final order consistent with Article III of the United States Constitution, (c) this is a

core proceeding under 28 U.S.C. § 157(b), (d) venue of this proceeding and the Motion in this

District is proper under 28 U.S.C. §§ 1408 and 1409, and (e) the Debtors' notice of the Motion

and opportunity for a hearing were adequate and appropriate under the circumstances and no other

or further notice need be provided; and this Court having reviewed the Motion and having heard

the statements in support of the relief requested in the Motion at a hearing before this Court (the

"Hearing"); and having determined that the legal and factual bases set forth in the Motion and the

First Day Declaration, establish just cause for the relief granted in this Order; and this Court having

found and determined that the relief sought in the Motion is in the best interests of the Debtors'

estates, their creditors and other parties in interest; and after due deliberation and sufficient cause

appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.    **Bidding Procedures.**  The Debtors have articulated good and sufficient reasons for

authorizing and approving the Bidding Procedures, which are fair, reasonable and appropriate under

the circumstances and designed to achieve the highest or otherwise best offer and to maximize the

value of the Debtors' estates.  The Debtors, with the assistance of their advisors, have engaged and

continue to engage in a fulsome marketing and sale process to solicit and develop the highest or

otherwise best offer for the Debtors' assets (the "**Assets**").  The Bidding Procedures are designed

to build on that marketing and sale process following entry of this Order.

2

B.     **Sale Notice**.  The *Notice of Sale Procedures, Auction and Sale Hearing,* substantially in the form attached hereto as Exhibit 2, (the "**Sale Notice**"), is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including: (i) the date, time and place of the Auction (if one is held); (ii) the Bidding Procedures and certain dates and deadlines related thereto; (iii) the objection deadline for the Sale and the date, time and place of the Sale Hearing; (iv) reasonably specific identification of the Assets subject to any Sale; (v) instructions for promptly obtaining a copy of the form APA; (vi) representations describing any Sale as being free and clear of liens, claims, interests and other encumbrances, with all such liens, claims, interests and other encumbrances attaching with the same validity and priority to the sale proceeds, and no other or further notice of any Sale shall be required.

C.     **Assumption and Assignment Procedures.**  The Motion and the Cure Notice (as defined herein) are reasonably calculated to provide counterparties to the Assigned Contracts with proper notice of the intended assumption and assignment of their executory contracts, any Cure Amounts (as defined herein), and the Assumption and Assignment Procedures (as defined herein) and are appropriate.

D.     **Stalking Horse Option.**  The Debtors' option to accept a Stalking Horse Bid and grant the Stalking Horse Bidder Bid Protections are reasonably calculated to enable the Debtors to maximize the value of its assets by permitting the Debtors to set the floor for bids and contributing to a robust auction process, for the benefit of the Debtors' estates, creditors, and other parties in interest.

64863/0001-44342556v2

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is GRANTED as set forth herein, and any objections, responses and reservations of rights to the Motion or to the relief requested therein that have not been withdrawn, waived, settled or resolved are hereby overruled in all respects on the merits with prejudice.

2.      **Sale Hearing.**   The Sale Hearing will commence on **_____, at [•].m., (ET),** before the Honorable Mary F. Walrath of the United States Bankruptcy Court for the District of Delaware, 824 Market St. N., 5th Floor, Courtroom #4, Wilmington, Delaware 19801.  The Sale Hearing may be adjourned by the Debtors without further notice other than by announcement in open Court, on the Court's calendar or in the applicable hearing agenda.  The Debtors shall present the results of the Auction (if any) or otherwise present any Successful Bidder to the Court at the Sale Hearing.

3.      **Sale Objection Deadline.**   Objections, if any, to the sale of the Assets to a Successful Bidder must be made by **_____, at 4:00 p.m. (ET)** (the "**Sale Objection Deadline**"). In each case, all objections must: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules and any orders of the Court; (c) state with particularity the legal and factual bases for the objection and the specific grounds therefor; and (d) be filed with the Court no later than the applicable Sale Objection Deadline and served on the following parties (the "Notice Parties"): (a) proposed counsel to the Debtors Cole Schotz P.C. (i) 500 Delaware Ave, Suite 1410 Wilmington, Delaware 19801 (Attn: Patrick J. Reilley at preilley@coleschotz.com); and (ii) Court Plaza North, P.O Box 800, 25 Main Street, Hackensack, New Jersey 07601 (Attn: Michael D. Sirota, Esq. at msirota@coleschotz.com, David Bass, Esq. at dbass@coleschotz.com and Michael Trentin, Esq. at mtrentin@coleschotz.com); (b) counsel to any statutorily appointed committee; (c) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs

4

Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (<u>Attn</u>: Timothy Fox, Esq. at <u>Joseph.Cudia@usdoj.gov</u>), so as to be actually received by the Sale Objection Deadline.

## I.    Bidding Procedures and Related Relief

4.    The Bidding Procedures, which are incorporated by reference as though fully set forth herein, are hereby approved in their entirety.  The Debtors are authorized to solicit bids and conduct an Auction, if necessary, pursuant to the terms set forth in the Bidding Procedures. The Bidding Procedures shall govern the submission, receipt, and analysis of all bids, and any party desiring to submit a bid on the Assets must do so strictly in accordance with the terms of the Bidding Procedures and this Order.

5.    The Debtors are authorized to take all actions as are necessary or appropriate to implement the Bidding Procedures.  Other than as expressly set forth in this Order or the Bidding Procedures, the Debtors reserve their rights, in their reasonable business judgment and in a manner consistent with their fiduciary duties and applicable law, to modify the Bidding Procedures, in any manner that they reasonably determine will best promote the goals of the Bidding Procedures, or impose, at or prior to the Auction, additional customary terms and conditions in connection with a Transaction, including, without limitation: (a) extending the deadlines set forth in the Bidding Procedures; (b) adjourning the Auction, including at the Auction; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; and (e) rejecting any or all Bids or Qualified Bids.

6.    Other than any Bid Protections approved for a Stalking Horse Bidder in accordance with the procedures set forth in this Order, no person or entity shall be entitled to any expense reimbursement, break-up fees, "topping," termination, or other similar fee or payment, and by

5

submitting such a bid, such person or entity is deemed to have waived their right to request or to file

with this Court any request for expense reimbursement or any fee of any nature in connection with

such bid, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

**II.        Designation of Stalking Horse Bidder and Bid Protections**

7.        Pursuant to the Bidding Procedures, the Debtors are authorized, but not directed, to

select a Stalking Horse Bidder and enter into agreement(s) (the "**Stalking Horse Agreement**")

with such Stalking Horse Bidder(s) and are further authorized, but not directed, to offer the Bid

Protections to such Stalking Horse Bidder(s) provided that the total Bid Protections offered to any

Stalking Horse Bidder shall not exceed 3% of the cash purchase price and expenses reimbursement

in the amount of $150,000 contemplated by Bid Protections.

8.        The Debtors shall be authorized, but not directed, to file with the Court a notice (a

"**Stalking Horse Notice**") on (a) identifying the Stalking Horse Bidder, the material terms of the

Stalking Horse Bid (including the purchase price and Assets subject to the Stalking Horse Bid),

and the amount and form of any Bid Protections offered to the Stalking Horse Bidder, and (b)

attaching a copy of the relevant Stalking Horse Agreement.

9.        The proposed designation of the Stalking Horse Bidder and Bid Protections

provided for under such Stalking Horse Agreement shall not be deemed approved unless approved

by separate order of the Court.

10.        Any objection to the designation of the Stalking Horse Bidder set forth in the

Stalking Horse Notice and Stalking Horse Agreement (a "**Bid Protections Objection**") shall be

filed no later than February ___, 2023 at 4:00 p.m. (prevailing Eastern time). If a timely Stalking

Horse Objection is filed, the Court shall hold a hearing to consider approval of the designation of

the Stalking Horse Bidder and Stalking Horse Agreement as a stalking horse to be held on the first date the Court is available

11.    If the Stalking Horse Agreement satisfies the condition that the Bid Protections, in total, do not exceed 3% of the cash purchase price and expenses reimbursement in the amount of $150,000 and the Stalking Horse Bidder is not an insider (as defined in section 101(31) of the Bankruptcy Code)—the Debtors may submit an order under certification of counsel approving the designation of the Stalking Horse Bidder and Stalking Horse Agreement as a stalking horse without the need for further hearing; *provided*, *however*, (i) a Bid Protections Objection is timely filed or (ii) a Stalking Horse Bidder and Stalking Horse Agreement are designated that do not satisfy each of the conditions in the prior sentence, the Court shall hold a hearing to consider approval of the designation of the Stalking Horse Bidder and Stalking Horse Agreement as a stalking horse to be held on the first date the Court is available.

## III.    Auction

12.    The Debtors are authorized, subject to the terms of this Order and the Bidding Procedures, to take actions reasonably necessary, in the discretion of the Debtors, to conduct and implement the Auction.

13.    Any party in interest may attend (but not participate in) the Auction if any such party in interest provides the Debtors with written notice of its intention to attend the Auction on or before the Bid Deadline, which written notice shall be sent to proposed counsel for the Debtor, via *e-mail,* Cole Schotz P.C., 500 Delaware Ave, Suite 1410 Wilmington, Delaware 19801 (Attn: Patrick J. Reilley at preilley@coleschotz.com).  For the avoidance of doubt, only Qualified Bidders (including any Stalking Horse Bidder, which shall be deemed a Qualified Bidder at all times) will be entitled to make any Bids at the Auction.  For the avoidance of doubt, representatives of any

7

statutorily appointed committee in the Chapter 11 Cases may attend the Auction without sending prior written notice of their intention to do so.

14.     The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid.

15.     If the Auction is cancelled, then the Debtors shall file a notice with the Court of such election within one (1) business day of the determination of such election by the Debtors.

## IV.     Sale Hearing Notice

16.     The Sale Notice is hereby approved.  Within two (2) business days following the entry of this Order, or as soon as reasonably practicable thereafter (the "**<u>Service Date</u>**"), the Debtors will cause the Sale Notice to be served in accordance with the Local Rules on: (a) the Office of the United States Trustee; (b) the United States Securities & Exchange Commission; (c) all appliable federal, state and local taxing authorities, including the Internal Revenue Service; (d) the Office of the Attorney General in each state in which the Debtors operate; (e) the United States Attorney's Office for the District of Delaware; (f) the United States Attorney General's Office for the District of Delaware; (g) all of the Debtors' known creditors; (h) counsel to any statutorily appointed committee; (i) any party known or reasonably believed to have asserted any lien, claim, or encumbrance or other interest in the Assets; (j) any party known or reasonably believed to have expressed an interest in acquiring some or substantially all of the Assets; and (k) any parties that have requested notice in these Cases pursuant to Bankruptcy Rule 2002.  The Debtors shall also post the Sale Notice and the Order on the website of the Debtors' claims and noticing agent located at https://cases.ra.kroll.com/AVCT.

17.     On or before February __, 2023 or as soon as practicable thereafter, the Debtors shall publish notice of the proposed Sale, substantially in the form of the Sale Notice (the

"**Publication Notice**"), once in the national edition of *The Wall Street Journal, The New York Times, USA Today,* or another publication of similar circulation. Publication of the Publication Notice shall be sufficient and proper notice of any Sale to any other interested parties whose identities are unknown to the Debtors.

## V.        Assumption and Assignment Procedures

18.        The Assumption and Assignment Procedures set forth in the Motion regarding the assumption and assignment of executory contracts and/or unexpired leases proposed to be assumed by the Debtors and assigned to a Successful Bidder are approved.

a.        **Cure Notice.**  Within two (2) business days after entry of this Order, the Debtors shall file with the Court and serve via first class mail, electronic mail, or overnight delivery, the Cure Notice on certain non-Debtor contract counterparties (collectively, the "**Contract Counterparties**"), and post the Cure Notice to the restructuring website https://cases.ra.kroll.com/AVCT. The Debtors may provide supplemental Cure Notices if they discover Contracts inadvertently omitted from the initial Cure Notice or such notice erroneously reports the Cure Amount. Contract Counterparties shall have at least seven (7) days from the service date of such supplemental Cure Notice to file and serve an objection in the manner described herein.

b.        **Content of Cure Notice.**  The Cure Notice shall notify the applicable Contract Counterparty that the Contracts may be subject to assumption and assignment in connection with the Sale, and contain the following information: (i) a list of the applicable Contracts that may be assumed and assigned in connection with the Sale (each, an "**Assigned Contract**" and, collectively, the "**Assigned Contracts**"); (ii) the applicable Contract Counterparties; (iii) the Debtors' good faith estimate of the proposed amount necessary to cure all monetary defaults, if any, under each Assigned Contract (the "**Cure Amount**"); and (iv) the deadline by which any Contract Counterparty to an Assigned Contract must file an objection to the proposed assumption, assignment, cure, and/or adequate assurance and the procedures relating thereto (the "**Cure Objection**"); *provided* that service of a Cure Notice does not constitute an admission that such Assigned Contract is an executory contract or unexpired lease or that such Assigned Contract will be assumed at any point by the Debtors or assumed and assigned pursuant to any Successful Bid.

c.        **Cure Objections.**  Cure Objections, if any, to a Cure Notice must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, the Local Bankruptcy Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the Cure Objection pertains to the proposed Cure Amounts, state the cure amount

alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Court prior to _____, **at 4:00 p.m. (prevailing Eastern time)** (the "**Cure Objection Deadline**"); *provided* that the Debtors may extend the Cure Objection Deadline by filing a notice of such modification on the Court's docket. A properly filed Cure Objection shall be heard at the Sale Hearing or such later date as may be agreed upon by the parties or fixed by the Court.

d.    **Dispute Resolution.** Any Cure Objection to the proposed assumption and assignment of an Assigned Contract or Cure Amounts that remains unresolved after the Sale Hearing shall be heard at such later date as may be agreed by the parties or fixed by the Court. To the extent that any Cure Objection cannot be resolved by the parties, such Contract shall be assumed and assigned only upon satisfactory resolution of the Cure Objection, to be determined in the Successful Bidder's reasonable discretion. To the extent a Cure Objection remains unresolved, the Contract may be conditionally assumed and assigned, subject to the consent of the Successful Bidder, pending a resolution of the Cure Objection after notice and a hearing. If a Cure Objection is not satisfactorily resolved, the Successful Bidder may determine that such contract should be excluded and not assigned, in which case the Successful Bidder will not be responsible for any Cure Amounts in respect of such Contract. Notwithstanding the foregoing, if a Cure Objection relates solely to the Cure Amounts (any such objection, a "**Cure Dispute**"), the applicable Assigned Contract may be assumed by the Debtors and assigned to the Successful Bidder provided that the cure amount the Contract Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Contract Counterparty) is deposited into a segregated account held by the Debtors pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution thereof.

e.    **No Cure Objections.** If there are no Cure Objections, or if a Contract Counterparty does not file and serve a Cure Objection in a manner that is consistent with the requirements set forth herein, (i) the Cure Amounts, if any, set forth in the Cure Notice shall be controlling, notwithstanding anything to the contrary in any Contract or any other document, and (ii) the Contract Counterparty will be deemed to have consented to the assumption or assumption and assignment of the Contract and the Cure Amounts, if any, will be forever barred from objecting to the assumption or assumption and assignment of such Contract and rights thereunder, including the Cure Amounts, if any, and from asserting any other claims related to such Contract against the Debtors or the Successful Bidder, or the property of any of them.

19.    Any objection to the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Assigned Contract must be filed with the Court no later than the Sale Hearing.

20.     Only those Assigned Contracts that are included on a schedule of assumed and assigned contracts attached to the APA with the Successful Bidder (including amendments or modifications to such schedules in accordance with such agreement) will be assumed and assigned to the Successful Bidder.

25.     The Cure Notice, substantially the form attached hereto as **Exhibit 3,** is hereby approved.

**VI.     Other Related Relief**

26.     The requirements set forth in Local Bankruptcy Rule 6004-1 are satisfied by the contents of the Motion.

27.     Notwithstanding Bankruptcy Rule 6004(h) or 6006(d), this Order shall be effective and enforceable immediately upon its entry.

28.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

29.     To the extent the provisions of this Order are inconsistent with the provisions of any exhibits referenced herein or with the Motion, the provisions of this Order shall control.

30.     The Debtors are authorized and empowered to take all actions they deem necessary to implement the relief granted in this Order in accordance with the Motion and to implement the Bidding Procedures.

31.     This Court retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation or enforcement of this Order.

64863/0001-44342556v2

## Exhibit 1

**Bidding Procedures**

## BIDDING PROCEDURES

On January 11, 2023, the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**Court**").

On ___ 2023, the Bankruptcy Court entered an order [D.I. [●]] (the "**Order**") approving these bidding procedures (the "**Bidding Procedures**"). The Bidding Procedures set forth the process by which the Debtors, in consultation with any statutorily appointed committee in these chapter 11 cases, will solicit and evaluate higher or otherwise better Bids (as defined below) for the acquisition of the Debtors' business and/or assets.

The Debtors are offering investors and/or purchasers the opportunity to acquire all of the company's assets (the "**Assets**").  The Assets are related to the company's business units, including (i) its unified communications as a service unit (the "**UCaaS Unit**") and (ii) its communications platform as a service unit (the "**CPaaS Unit**"), which includes its Microsoft Teams Direct Routing as a Service (DRaaS) and its API Marketplace service offerings (collectively, the "**Business Units**" and each a "**Business Unit**").  The Assets will include, in part, (i) all customer contracts and statements of work related to the Business Units; (ii) all hardware and software currently used in each Business Unit; (iii) all other equipment, furniture and other tangible items used in each Business Unit; and (iv) all patents, tradenames, websites, and copyrights.  Prior to Petition Date, the Debtors' proposed investment bank, Northland Capital Markets ("**Northland**"), commenced the distribution of teaser and other promotional materials to potentially interested parties advising them of the opportunity to acquire the Assets pursuant to a chapter 11 plan, section 363 transaction, or otherwise (a "**Sale**"). The Debtors' representatives, including Northland, shall oversee the Sale process.

---

**Copies of the Order or other documents related thereto are available upon request to Stretto or visiting the Debtors' restructuring website at** https://cases.ra.kroll.com/AVCT**.**

The applicable Debtor representatives and their contact information are set forth below:

**Proposed Investment Banker to the Debtors – Northland**
Kurtis Fechtmeyer (KFechtmeyer@northlandcapitalmarkets.com)

**Proposed Counsel to the Debtors – Cole Schotz**
Patrick J. Reilley (preilley@coleschotz.com)
Michael Sirota (msirota@coleschotz.com)
David Bass (dbass@coleschotz.com)
Michael Trentin (mtrentin@colechotz.com)

**Proposed Financial Advisor to the Debtors – SOLIC Capital Advisors**
Edward Casas (ecasas@soliccapital.com)
Gregory Hagood (ghagood@soliccapital.com)
Alexander Rowe (arowe@soliccapital.com)

---

1

**OVERVIEW**

The Debtors are offering for sale the Assets, and Qualified Bidders (as defined below) may submit bids for all of the Assets.  Except as otherwise provided in a purchase agreement to be executed by a Successful Bidder (as defined below), the sale of the Assets will be free and clear of all liens, claims and encumbrances to the maximum extent permitted by section 363 of the Bankruptcy Code.

The Sale of the Assets shall be subject to a competitive bidding process as set forth herein and approval by the Bankruptcy Court under sections 105(a), 363, and 365 of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 2002, 6004, 6006, 9007, 9008, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

**KEY DATES**

These Bidding Procedures set forth the terms by which prospective bidders, if any, may qualify for and participate in an Auction, thereby competing to make the highest or otherwise best offer for the Assets.  Subject to the Debtors' rights set forth herein, the following table sets forth key dates and deadlines with respect to the Sale process.

| Event or Deadline | Date and Time |
| --- | --- |
| Bid Deadline | March 3, 2023, at 4:00 p.m. (prevailing Eastern Time) |
| Auction (if applicable) | An Auction may be held on March 7, 2023, at 9:00 a.m. (prevailing Eastern Time) via live auction and/or remote video |
| Cure Objection Deadline | February 28, 2023, at 4:00 p.m. (prevailing Eastern Time) |
| Sale Objection Deadline | February 28, 2023, at 4:00 p.m. (prevailing Eastern Time) |
| Successful Bidder Adequate Assurance Objection Deadline | March 10, 2023, at 4:00 p.m. (prevailing Eastern Time) |
| Sale Hearing | March 13, 2023, at __ [a./p.]m. (prevailing Eastern Time), or as soon thereafter as the Court's calendar permits |
| Target Closing Date | No later than March 27, 2023 |

## MARKETING PROCESS

### I.      Contact Parties

The Debtors, in consultation with Northland, developed a list of parties whom they believe may be interested in, and whom the Debtors reasonably believe would have the financial resources to consummate, a sale transaction through a section 363 sale process (a "**Transaction**"). The list of parties includes both strategic investors and financial investors (collectively, the "**Contact Parties**"). The Contact Parties include parties whom the Debtors or their advisors previously contacted regarding a Transaction, regardless of whether such parties expressed any interest at such time in pursuing a Transaction. The Debtors will continue to discuss and may supplement the list of Contact Parties throughout the marketing process, as appropriate.

The Debtors may distribute (to the extent not already distributed) to each Contact Party and any other interested party or potential bidder (each, a "**Potential Bidder**") an "**Information Package**" consisting of: (i) a copy of the Bidding Procedures, the Order, and the Motion; (ii) a form confidentiality agreement (a "**Confidentiality Agreement**") in form and substance acceptable to the Debtors; and (iii) such other materials as may be appropriate under the circumstances.

### II.     Participation Requirements and Initial Diligence

To receive due diligence information, including full access to the Debtors' electronic data room and to additional non-public information regarding the Debtors, a Potential Bidder must deliver, to the extent not already delivered, the following documents (collectively, the "**Preliminary Bid Documents**") by email to each of: (i) Cole Schotz; (ii) SOLIC Capital Advisors ("**SOLIC**") and (iii) Northland (collectively, the "**Bid Recipients**"):

   a.      an executed Confidentiality Agreement on terms acceptable to the Debtors, to the extent not already executed;

   b.      the identity of the Potential Bidder and a list of contacts for the Potential Bidder;

   c.      a description of the diligence the Potential Bidder seeks to conduct; and

   d.      evidence by the Potential Bidder of its financial capacity to close a proposed transaction, which may include financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, the party that will bear liability for a breach).

Promptly after a Potential Bidder delivers Preliminary Bid Documents to the Bid Recipients, the Debtors, in consultation any statutorily appointed committee in these chapter 11 cases, will assess the adequacy of the evidence of its financial capacity and notify the Potential Bidder whether such Potential Bidder has submitted acceptable Preliminary Bid Documents so that the Potential Bidder may proceed to conduct due diligence and ultimately submit a Bid and participate in the Auction, as applicable.  Only those Potential Bidders that have submitted acceptable Preliminary Bid Documents (each, a "**Bidder**") may submit Bids; *provided*, *however*,

3

that the Debtors, in their reasonable discretion, may agree to waive some or all of the Potential Bidder requirements set forth herein. The Debtors reserve the right to work with any Potential Bidder to cure any deficiencies in the Preliminary Bid Documents.

As soon as reasonably practicable after the Debtors, in consultation with any statutorily appointed committee in these chapter 11 cases, determine that a Potential Bidder is a Bidder, the Debtors will provide such Bidder with access to an electronic data room and reasonable due diligence information as reasonably requested by such Bidder (to the extent such Bidder has not already been provided such access and information). All substantive direct communications, including any due diligence requests, with Potential Bidders and Qualified Bidders shall be through and directed to Northland and SOLIC (via email is sufficient). Northland and/or SOLIC will work to facilitate meetings between any interested Bidder and the Debtors' management team. For all Potential Bidders, the due diligence period will end on the Bid Deadline, and after the Bid Deadline, the Debtors will have no obligation to furnish any due diligence information.

The Debtors and their advisors will coordinate all reasonable requests from Bidders for additional information and due diligence access. The Debtors, in consultation with any statutorily appointed committee in these chapter 11 cases, may decline to provide such information to Bidders who, in the Debtors' business judgment and in consultation with any statutorily appointed committee in these chapter 11 cases, have not established, or who have raised doubt, that such Bidder intends in good faith or has the capacity to consummate a Transaction.

For any Bidder who is a competitor of the Debtors or is affiliated with any competitor of the Debtors, the Debtors reserve the right to withhold, any diligence materials that the Debtors determine are business-sensitive or otherwise inappropriate for disclosure to such Bidder at such time.

Each Bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such Bidder and its contemplated Transaction.

## AUCTION PROCESS

### III. Bid Deadline

A Bidder that desires to make a proposal, solicitation, or offer (each, a "**Bid**") shall transmit such proposal, solicitation, or offer via email to each of the Bid Recipients so as to be **actually received** by them on or before **March 3, 2023, at 4:00 p.m.** (ET) (the "**Bid Deadline**").

### IV. Bid Requirements

Each Bid by a Bidder must be submitted in writing and satisfy the following requirements (collectively, the "**Bid Requirements**"):

   a.    Identity of Assets: Each Bid must state that it is acquiring all of the Assets.

b.    Purchase Price: Each Bid must clearly set forth the terms of any proposed Transaction, including and identifying separately any cash and non-cash components of the proposed Transaction consideration, such as certain liabilities to be assumed by the Bidder as part of the Transaction, for example (the "**Purchase Price**"). The Purchase Price should be a single point value in U.S. dollars for the total enterprise value of the Assets the Potential Bidder seeks to acquire on a cash-free, debt-free basis.

c.    Good Faith Deposit: Each Bid must be accompanied by a cash deposit in an amount equal to 10% of the aggregate value of the cash and non-cash consideration of the Bid to be held in an escrow account to be identified and established by the Debtors (the "**Deposit**"). To the extent a Bid is modified before, during, or after the Auction in any manner that increases the purchase price contemplated by such Bid, the Debtors reserve the right to require that such Bidder increase its Deposit so that it equals 10% of the increased value of the aggregate value of the cash and non-cash components of the proposed Transaction.

d.    Marked Agreement: Each Bid must be accompanied by executed transaction documents, including a draft purchase agreement (the "**APA**") and a transition services agreement, the forms of which will be provided to any Potential Bidder prior to the Bid Deadline and in the case of an Auction with a stalking horse bidder, a markup of the stalking horse agreement, including the exhibits and schedules related thereto and any related Transaction documents or other material documents integral to such Bid, pursuant to which the Bidder proposes to effectuate the Transaction (collectively, the "**Transaction Documents**").  Each Bidder's APA must provide (i) a commitment to close within two business days after all closing conditions are met, and (ii) a representation that the Bidder will use its reasonable best efforts to satisfy all applicable regulatory conditions.

e.    Committed Financing: To the extent that a Bid is not accompanied by evidence of the Bidder's capacity to consummate the Transaction set forth in its Bid with cash on hand, each Bid must include evidence of committed financing (debt or equity funding, as applicable), including the identity and contact information of the specific person(s) or entity(s) responsible for such committed funding whom Northland, SOLIC or Cole Schotz should contact regarding such funding, that demonstrates that the Bidder has received sufficient debt and/or equity funding commitments to satisfy the Bidder's Purchase Price and other obligations under its Bid. Such funding commitments or other financing must be acceptable to the Debtors (in consultation with any statutorily appointed committee in these chapter 11 cases) and must be unconditional and not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors.

f.    Contingencies; No Financing or Diligence Outs: A Bid shall not be conditioned on a Bidder obtaining, or the sufficiency of, financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy at

the closing of specified representations and warranties or the satisfaction at the closing of specified conditions, which shall not be more burdensome, in the Debtors' reasonable business judgment, after consultation with any statutorily appointed committee in these chapter 11 cases, than those contemplated by the stalking horse bid, if any, and each Bid must identify with particularity each and every condition to closing, including the executory contracts and unexpired leases for which assumption and assignment is required. The Potential Bidders are expected to have completed all of their due diligence by the Bid Deadline, including all business, legal, accounting, and other confirmatory diligence. The extent and nature of any remaining due diligence should be set forth in a specific list attached to each Bid.

g.  <u>Identity</u>: Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Bidder if such Bidder is an entity formed for the purpose of consummating the proposed Transaction contemplated by such Bid), and the complete terms of any such participation. Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid. Each Bid must also include contact information for the specific person(s) and counsel whom the Debtors' advisors should contact regarding such Bid.

h.  <u>Authorization</u>: Each Bid must contain evidence that the Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors) with respect to the submission of its Bid and the consummation of the Transactions contemplated in such Bid.

i.  <u>Compliance with the Bankruptcy Code and Non-Bankruptcy Law; Acknowledgement</u>. Each Bid must comply in all respects with the Bankruptcy Code and any applicable non-bankruptcy law. Each Bid must also include a written acknowledgment that the Bidder agrees to all of the terms of the Sale set forth in these Bidding Procedures.

j.  <u>As-Is, Where-Is</u>: The Sale of the Assets shall be as-is, where-is.  Each Bid must include a written acknowledgement and representation that the Bidder: (1) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer; (2) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (3) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bidder's Transaction Documents.

k.  <u>Expenses; Disclaimer of Fees</u>: Each Bid (other than a stalking horse bid) must disclaim any right to receive a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation.  For the avoidance of doubt, no

Potential Bidder (other than a stalking horse bidder) will be permitted to request, nor be granted by the Debtors, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting a Bid any Potential Bidder is waiving any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

l.    <u>Adequate Assurance of Future Performance</u>: Each Bid (other than a stalking horse bid) must (1) identify the Contracts to be assumed and assigned in connection with the proposed acquisition, (2) provide for the payment of all Cure Amounts related to such Contract by the Potential Bidder, and (3) demonstrate, in the Debtors' reasonable business judgment, that the Potential Bidder can provide adequate assurance of future performance under all such Contracts.

m.    <u>Joint Bids</u>: The Debtors are authorized to approve joint Bids in their reasonable discretion on a case-by-case basis.

n.    <u>Backup Bid</u>: Each Bid shall provide that the Potential Bidder will serve as a Backup Bidder if the Potential Bidder's Bid is the next highest or otherwise best Bid.

o.    <u>Expected Closing Date</u>: Each Bid shall state the Potential Bidder's expected date of closing of the Sale, which shall be no later than [March 27], 2023; *provided*, that such closing date may be extended pursuant to the terms of an asset purchase agreement.

By submitting its Bid, each Bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of the Bidding Procedures and to refrain from submitting a Bid or seeking to reopen the Auction after conclusion of the Auction. **The submission of a Bid shall constitute a binding and irrevocable offer to acquire the Assets reflected in such Bid.**

## V.    **Designation of Qualified Bidders**

A Bid will be considered a "**<u>Qualified Bid</u>**," and each Bidder that submits a Qualified Bid will be considered a "**<u>Qualified Bidder</u>**," if the Debtors, in consultation with any statutorily appointed committee in these chapter 11 cases, determine that such Bid:

a.    satisfies the Bid Requirements;

b.    is reasonably likely (based on availability of financing, antitrust, or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid (as defined below), within a timeframe acceptable to the Debtors (in consultation with any statutorily appointed committee in these chapter 11 cases); and

c.    within 24 hours after the Bid Deadline, the Debtors (after consulting with any statutorily appointed committee in these chapter 11 cases) will notify each Bidder

whether such party is a Qualified Bidder and shall provide the Notice Parties (as defined below) with a copy of each Qualified Bid.

The Debtors reserve the right to consider a Bid for less than all of the Assets, *provided* that the Debtors receive Bids for each of the respective Business Units that would each themselves be considered a Qualified Bidder (other than the requirement that such Bid be for the entirety of the Assets). To be considered as a Bidder for less than all Assets, the following criteria shall apply: any such Bidder that desires to purchase only the UCaaS Unit must state in its Bid that it will provide transition support services to any Successful Bidder of the CPaaS Unit under a transition support agreement (the "**TSA**") for a minimum period of at least six (6) months at fees based on actual cost incurred by the Successful Bidder of the UCaaS Unit and any Bidder that desires to acquire the CPaaS Unit will do so pursuant to a TSA with the Successful Bidder of the UCaaS Unit. Each such Bidder must state in its Bid that it will work cooperatively to bear all cost for separating the CPaaS Unit from the UCaaS Unit and that each such Bid is not conditioned upon the successful separation of the Business Units or any obligation by the Debtors to assist in such separation or incur the cost thereof.

If any Bid is determined not to be a Qualified Bid, the Debtors will refund such Bidder's Deposit promptly after the Bid Deadline.

Between the date that the Debtors notify a Bidder that it is a Qualified Bidder and the Auction date, the Debtors may (in consultation with any statutorily appointed committee in these chapter 11 cases) discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the prior written consent of the Debtors (in consultation with any statutorily appointed committee in these chapter 11 cases), a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase its Purchase Price, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; *provided that* any Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

## VI. The Auction

If necessary, the Auction shall take place on March 7, 2023, at 9:00 a.m. (ET), via live auction and/or remote video; or such other place and time as the Debtors shall notify all Qualified Bidders that have submitted Qualified Bids.

No later than March 6, 2023, the Debtors will notify all Qualified Bidders of the highest or otherwise best Qualified Bid (the "**Baseline Bid**") and provide copies of the documents supporting the Baseline Bid to all Qualified Bidders. The determination of which Qualified Bid constitutes the Baseline Bid and which Qualified Bid constitutes the Successful Bid shall take into account any factors the Debtors (in consultation with any statutorily appointed committee in these chapter 11 cases) deem relevant to the value of the Qualified Bid to the Debtors' estates, including, among other things: (a) the type and amount of Assets sought to be purchased in the Bid; (b) the amount and nature of the total consideration; (c) the likelihood of the Bidder's ability to close a transaction and the timing thereof including any terms or consideration of such Qualified Bid; (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the

transaction contemplated by the Baseline Bid; (e) the assets and liabilities excluded from the Qualified Bid and any executory contracts or leases or other liabilities proposed to be assumed; (f) any benefit to the Debtors' estates from any assumption of liabilities or waiver of liabilities; (g) the likelihood of a Qualified Bid leading to a confirmed chapter 11 plan; (h) the transaction structure and execution risk, including conditions to, timing of, and certainty of closing, availability of financing and financial wherewithal to meet all commitments, and any required governmental or other approvals; (i) the tax consequences of such Qualified Bid; and (j) any other factors the Debtors may, consistent with their fiduciary duties, reasonably deem relevant (collectively, the "**Bid Assessment Criteria**").

The Auction shall be conducted according to the following procedures:

      a.    The Debtors Shall Preside over the Auction; Participation and Attendance at the Auction

The Debtors and their professionals shall direct and preside over the Auction. At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid. All incremental Bids made thereafter shall be Overbids (as defined herein) and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders. The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids, and the Successful Bid.

Only Qualified Bidders that have submitted Qualified Bids by the Bid Deadline are eligible to participate in the Auction, subject to the terms of these Bidding Procedures and other limitations as may reasonably be imposed by the Debtors. Qualified Bidders participating in the Auction must appear at the Auction in person or through a duly authorized representative.

Any party in interest may attend (but not participate in) the Auction if any such party in interest provides the Debtors with written notice of its intention to attend the Auction on or before the Bid Deadline, which written notice shall be sent to proposed counsel for the Debtors via electronic mail, to Patrick J. Reilley, Esq. preilley@coleschotz.com. For the avoidance of doubt, only Qualified Bidders will be entitled to make any Bids at the Auction.

      b.    Terms of Overbids

"Overbid" means any bid made at the Auction by a Qualified Bidder after the Debtors' announcement of the Baseline Bid. Each Overbid must comply with the following conditions:

          (i)    Minimum Overbid. Any Overbid, including any Bids by a stalking horse bidder, must be made in minimum increments of $225,000 (or such other amount as the Debtors may determine after consultation with any statutorily appointed committee in these chapter 11 cases) of additional value (including after payment of the Bid Protections to a stalking horse bidder, if applicable).

          (ii)    Conclusion of Each Overbid Round. Upon the solicitation of each round of Overbids, the Debtors may announce a deadline (the "**Overbid Round**

**Deadline**"), subject to extension by the Debtors, by which time any Overbids must be submitted to the Debtors.

(iii)    <u>Overbid Alterations</u>. An Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtors' estates than any prior Qualified Bid or Overbid and shall otherwise comply with the terms of these Bidding Procedures.

(iv)    <u>Announcing Highest Bid</u>. After each Overbid Round Deadline, the Debtors shall determine, in consultation with any statutorily appointed committee in these chapter 11 cases and taking into account the Bid Assessment Criteria, whether an Overbid is higher or otherwise better than the Baseline Bid in the initial Overbid round or, in subsequent rounds, the Overbid previously designated by the Debtors as the prevailing highest or otherwise best Bid (the "**Prevailing Highest Bid**"). The Debtors shall announce and describe to all Qualified Bidders present at the Auction the material terms of any new Overbid designated by the Debtors as the Prevailing Highest Bid, the identity of the bidder with the Prevailing Highest Bid, as well as the value attributable by the Debtors to such Prevailing Highest Bid based on, among other things, the Bid Assessment Criteria.

c.    <u>Consideration of Overbids</u>

The Debtors, in consultation with any statutorily appointed committee in these chapter 11 cases, reserve the right to adjourn the Auction as necessary to (i) facilitate discussions between the Debtors and Qualified Bidders, (ii) provide Qualified Bidders with additional time to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to offer such additional evidence as the Debtors may require, such as with respect to financial capacity or sufficient funding or financing, in order to consummate the proposed Transaction at the prevailing Overbid amount.

d.    <u>Closing the Auction</u>

The Auction shall continue until there is only one Qualified Bid that the Debtors determine, after consultation with any statutorily appointed committee in these chapter 11 cases, and taking into account the Bid Assessment Criteria, to be the highest or otherwise best Qualified Bid for the Assets. Such Qualified Bid shall be declared the "**Successful Bid**," and such Qualified Bidder, the "**Successful Bidder**," and the Auction will be closed.  Such acceptance by the Debtors of the Successful Bid (to be made in accordance with the terms of this section VI(d) of the Bidding Procedures) is conditioned upon approval by the Court of the Successful Bid. Following the closing of the Auction, the Debtors shall not initiate contact with, solicit, or encourage proposals from any person or entity with respect to the Assets.

e.    <u>No Collusion; Good-Faith *Bona Fide* Offer</u>

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (i) it has not engaged in any collusion with respect to the bidding, (ii) its

Qualified Bid is a good-faith *bona fide* offer, and (iii) it intends to consummate the proposed Transaction if selected as the Successful Bidder.

## VII. Backup Bidder

a. Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Qualified Bid at the Auction for the Assets shall be required to serve as a backup bidder (the "**Backup Bidder**") until such time that the Sale to the Successful Bidder is consummated, but no later than thirty (30) days past the Sale Hearing, and each Qualified Bidder shall agree and be deemed to agree to be the Backup Bidder if so designated by the Debtors.

b. The identity of the Backup Bidder and the amount and material terms of the Qualified Bid of the Backup Bidder shall be announced by the Debtors, after consultation with any statutorily appointed committee in these chapter 11 cases, at the conclusion of the Auction at the same time the Debtors announce the identity of the Successful Bidder. The Backup Bidder shall be required to keep its Qualified Bid (or if the Backup Bidder submits one or more Overbids at the Auction, its final Overbid) open and irrevocable until such time that the Transaction is consummated. The Backup Bidder's Deposit shall be held in escrow pending consummation of the Sale to the Successful Bidder.

c. If a Successful Bidder fails to consummate the approved Transaction contemplated by its Successful Bid, the Debtors may select the Backup Bidder as the Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes. The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Bid of such Backup Bidder without further order of the Court or notice to any party. In such case, the defaulting Successful Bidder's Deposit shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available remedies against the defaulting Successful Bidder, including with respect to specific performance.

## VIII. Reservation of Rights & Fiduciary Out

The Debtors reserve their rights to modify these Bidding Procedures, after consultation with any statutorily appointed committee in these chapter 11 cases, in any manner that they reasonably determine will best promote the goals of these Bidding Procedures, or impose, at or prior to the Auction, additional customary terms and conditions in connection with a Sale, including, without limitation: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction at the Auction; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; and (e) rejecting any or all Bids or Qualified Bids.

For the avoidance of doubt and notwithstanding anything to the contrary herein, nothing in these Bidding Procedures or the Order shall require a Debtor or the board of directors, board of managers, or similar governing body of a Debtor to take any action or to refrain from taking any

action related to any sale transaction to the extent taking or failing to take such action would be inconsistent with applicable law or its fiduciary obligations under the applicable law.  Further, nothing in these Bidding Procedures or the Order shall diminish the right of the Debtors and their respective directors, officers, employees, investment bankers, attorneys, accountants, consultants, and other advisors or representatives to: (a) consider, respond to, and facilitate alternate proposals for sales or other restructuring transactions involving any or all of the Assets (each, an "**Alternate Proposal**"); (b) provide access to non-public information concerning the Debtors to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity; (c) maintain or continue discussions or negotiations with respect to Alternate Proposals; (d) otherwise cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiation of Alternate Proposals; and (e) enter into or continue discussions or negotiations with holders of claims against or equity interests in a Debtor or any other party in interest in these chapter 11 cases or any other entity regarding Alternate Proposals.

## IX.    Consent to Jurisdiction

All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction or the construction and enforcement of these Bidding Procedures.

## X.    Sale Hearing

A hearing to consider approval of the Successful Bid (or to approve the stalking horse agreement, as applicable, if no Auction is held) (the "**Sale Hearing**") is proposed to take place on **March 13, 2023,** at __ [a./p.]m. (prevailing Eastern Time), at the Court. At the Sale Hearing, the Debtors will present such Successful Bid to the Court for approval. For the avoidance of doubt, the Sale Hearing may be a confirmation hearing if the Debtors and the Successful Bidder elect to implement a Transaction pursuant to a chapter 11 plan.

## XI.    Return of Deposit

The Deposit of the Successful Bidder shall be applied to the purchase price of such transaction at closing. The Deposits for each Qualified Bidder shall be held in one or more escrow accounts on terms acceptable to the Debtors in their sole discretion and shall be returned (other than with respect to the Successful Bidder and the Backup Bidder) promptly after the Auction.

If a Successful Bidder fails to consummate a proposed transaction because of a breach by such Successful Bidder, the Debtors will not have any obligation to return the Deposit deposited by such Successful Bidder, which may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors, and the Debtors shall be free to consummate the proposed transaction with the applicable Backup Bidder without the need for an additional hearing or order of the Court.

## XII.    No Modification of Bidding Procedures

These Bidding Procedures may not be modified except with the express prior written consent of the Debtors.

**Exhibit 2**

**Auction and Sale Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMERICAN VIRTUAL CLOUD TECHNOLOGIES, INC., *et al.*, | Case No. 23-10020 (MFW) |
| Debtors.[1] | (Jointly Administered) |

## NOTICE OF AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE REGARDING THE FOLLOWING:**

On January 11, 2023, American Virtual Cloud Technologies, Inc. and certain of its affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") each filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

The Debtors are soliciting offers for the purchase substantially all of the Debtors' assets and assumption of certain liabilities of the Debtors consistent with the bidding procedures (the "Bid Procedures") approved by the Court (the "Court") by entry of an order on [●], 2023 [Docket No. [●]] (the "Bid Procedures Order").[2] **All interested bidders should carefully read the Bid Procedures and Bid Procedures Order.** To the extent that there are any inconsistencies between this notice and the Bid Procedures or the Bid Procedures Order, the Bid Procedures or the Bid Procedures Order, as applicable, shall govern in all respects.

The Bid Deadline is **[●], 2023 at 4:00 p.m. (prevailing Eastern Time)**, and that any person or entity who wishes to participate in the Auction must comply with the participation requirements, bid requirements, and other requirements set forth in the Bid Procedures. Only Qualified Bidders that have submitted Qualified Bids by the **[●], 2023, at 4:00 p.m. (ET)** Bid Deadline are eligible to participate in the Auction, subject to the terms of the Bid Procedures and other limitations as may reasonably be imposed by the Debtors. Qualified Bidders participating in the Auction must appear at the Auction in person or through a duly authorized representative.

The Debtors may conduct the Auction, at which time they will consider proposals submitted to the Debtors and their professionals, by and pursuant to the Bid Procedures as set forth

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: American Virtual Cloud Technologies, Inc. (2421), AVCtechnologies USA, Inc. (8886), and Kandy Communications LLC (5853). Each Debtor's corporate headquarters is 1720 Peachtree Road, Suite 629, Atlanta, Georgia 30309.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bid Procedures Order.

in the Bid Procedures Order, on **[●], 2023 at [●]:00 a.m. (ET)**, via live auction and/or remote video.

Except as otherwise set forth in the Bid Procedures Order with respect to objections to proposed cure amounts or the assumption and assignment of Assigned Contracts, objections, if any, to a proposed Sale **must**: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court by **[●], 2023 at 4:00 p.m. (ET)**.

A hearing to consider approval of the Successful Bid (or to approve a Stalking Horse APA, as applicable, if no Auction is held) (the "Sale Hearing") shall take place on **[●], 2023**, at such time to be set by the Court, at the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, Wilmington, Delaware 19801. At the Sale Hearing, the Debtors will present such Successful Bid to the Court for approval.

Objections, if any, to the Motion and the sale of the Assets to a Successful Bidder, must be filed with the Court and served upon counsel to the Debtors so as to be actually received by **[●], 2023 at 4:00 p.m. (ET)**. In each case, all objections must: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual bases for the objection and the specific grounds therefor; and (d) be filed with the Court no later than the applicable objection deadline and served on proposed counsel to the Debtors. ***Any party who fails to timely file an objection to entry of the Sale Order (i) shall be forever barred from objecting thereto, (ii) shall be deemed to consent to the sale of the Assets as approved by any Sale Order, and (iii) shall be deemed to "consent" for purposes of Section 363(f)(2) of the Bankruptcy Code.***

This notice is subject to the fuller terms and conditions of the Motion, the Bid Procedures, and the Bid Procedures Order. In the event of any conflict, the Bid Procedures Order shall control, and the Debtors encourage parties in interest to review such documents in their entirety. Parties interested in receiving more information regarding the Sale and/or copies of any related document, including the Motion, or the Bid Procedures Order, may make a written request to counsel for the proposed counsel for the Debtors.

*[Remainder of Page Intentionally Left Blank]*

64863/0001-44332767v1

Dated: _____ 2023
         Wilmington, Delaware

**COLE SCHOTZ P.C.**

*/s/ DRAFT*_____
Patrick J. Reilley (No. 4451)
Jack M. Dougherty (No. 6784)
Michael E. Fitzpatrick (No. 6797)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
preilley@coleschotz.com
jdougherty@coleschotz.com
mfitzpatrick@coleschotz.com

-and-

Michael D. Sirota (admitted *pro hac vice*)
David M. Bass (admitted *pro hac vice*)
Michael Trentin (admitted *pro hac vice*)
Conor D. McMullan (admitted *pro hac vice*)
Court Plaza North
25 Main Street
Hackensack, NJ 07601
Telephone: 201-489-3000
Facsimile: 201-489-1536
msirota@coleschotz.com
dbass@coleschotz.com
mtrentin@coleschotz.com
cmcmullan@coleschotz.com

*Proposed Counsel for Debtors and*
*Debtors-in-Possession*

64863/0001-44332767v1

## Exhibit 3

**Cure Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>AMERICAN VIRTUAL CLOUD<br>TECHNOLOGIES, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-10020 (MFW)<br><br>(Jointly Administered) |

**NOTICE TO CONTRACT PARTIES TO POTENTIALLY**
**ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

> **YOU ARE RECEIVING THIS NOTICE BECAUSE YOU**
> **OR ONE OF YOUR AFFILIATES IS A COUNTERPARY TO AN**
> **EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE**
> **OF THE DEBTORS AS SET FORTH ON EXHIBIT A ATTACHED HERETO.**

 **PLEASE TAKE NOTICE** that on [●], 2023, the United States Bankruptcy Court for the District of Delaware (the "Court") entered the *Order (i) Authorizing and Approving the Bidding Procedures in Connection with the Sale of the Debtors' Assets (ii) Authorizing the Debtors to Select a Stalking Horse Bidder and Provide Bid Protections; (iii) Authorizing and Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with the Sale, (iv) Scheduling an Auction and Sale Approval Hearing (iv) Approving the Form and Manner of Notice of the Sale Hearing; and (v) Granting Related Relief* [Docket No. [●]] (the "Bid Procedures Order"),[2] authorizing the Debtors to solicit offers for the purchase of certain of the Debtors' assets and, if necessary, to conduct an auction (the "Auction") to select the party to purchase such assets. The Auction (if any) will be governed by the bidding procedures (attached to the Bid Procedures Order as **Exhibit 1** (the "Bid Procedures").

 **PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bid Procedures and the terms of any Successful Bid, the Debtors **may** assume and assign to the Successful Bidder certain of the Assigned Contracts listed on the Assigned Contracts Schedule, attached hereto as **Exhibit A**, to which you are a counterparty, upon approval of the Sale. The Assigned Contracts Schedule can also be viewed on the Debtors' case website (https://cases.ra.kroll.com/AVCT). The Debtors have conducted a review of their books and records and have determined that the cure amount for unpaid

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: American Virtual Cloud Technologies, Inc. (2421), AVCtechnologies USA, Inc. (8886), and Kandy Communications LLC (5853). Each Debtor's corporate headquarters is 1720 Peachtree Road, Suite 629, Atlanta, Georgia 30309.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bid Procedures Order.

monetary obligations under such Assigned Contracts is as set forth on **Exhibit A** attached hereto (the "Cure Costs").

**PLEASE TAKE FURTHER NOTICE** that if you disagree with the proposed Cure Costs or object to a proposed assignment to the Successful Bidder of any Assigned Contract, your objection must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Costs, state the correct cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) if you object to proposed Cure Costs or a proposed assignment to the Successful Bidder of any Assigned Contract, be filed with the Court no later than **[●], 2023, at 4:00 p.m. (prevailing Eastern Time)** (the "Cure Objection Deadline") and served on following parties: a) counsel to the Debtor, Cole Schotz P.C. (i) 500 Delaware Avenue, Suite 1410, Wilmington, DE 19801 (Attn: Patrick J. Reilley, Esq. at preilley@coleschotz.com); and (ii) 25 Main Street, Hackensack, NJ 07601 (Attn: Michael D. Sirota at msirota@coleschotz.com; David M. Bass, Esq. at dbass@coleschotz.com); and (b) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Joseph F. Cudia, Esq. at joseph.cudia@usdoj.gov).

**PLEASE TAKE FURTHER NOTICE** that, objections, if any, to the assumption and assignment of any Assigned Contract based solely on the provision of adequate assurance of future performance under any Lease or Contract, pursuant 11 U.S.C. § 365, must: (a) be in writing and signed by counsel or attested to by the objecting party; (b) filed with the Clerk of the Court, 824 N. Market Street, 3rd Floor, Wilmington, DE 19801, **one business day prior to the Sale Hearing** (the "**Adequate Assurance Objection Deadline**"), as applicable; (c) identify the Lease or Contract to which the objector is party; and (d) describe with specificity what the objecting party believes is required to provide Adequate Assurance.

**PLEASE TAKE FURTHER NOTICE** that if no objection to (a) the Cure Costs(s), (b) the proposed assignment and assumption of any Assigned Contract, or (c) adequate assurance of the Successful Bidder's ability to perform is filed by the Cure Objection Deadline, then (i) you will be deemed to have stipulated that the Cure Costs as determined by the Debtors are correct, (ii) you will be forever barred, estopped, and enjoined from asserting any additional cure amount under the proposed Assigned Contract, and (iii) you will be forever barred, estopped, and enjoined from objecting to such proposed assignment to the Successful Bidder on any grounds, including that the Successful Bidder has not provided adequate assurance of future performance as of the closing date of the Sale.

**PLEASE TAKE FURTHER NOTICE** that any Cure Objection in connection with the Successful Bid that otherwise complies with these procedures yet remains unresolved as of the commencement of the Sale Hearing, shall be heard at a later date to be fixed by the Court.

**PLEASE THAT FURTHER NOTICE** that, notwithstanding anything herein, the mere listing of any Assigned Contract on the Cure Notice does not require or guarantee that such Assigned Contract will be assumed by the Debtors at any time or assumed and assigned, and all rights of the Debtors and the Successful Bidder with respect to such Assigned Contract are

reserved. Moreover, the Debtors explicitly reserve their rights, in their reasonable discretion, to seek to reject or assume each Assigned Contract pursuant to section 365(a) of the Bankruptcy Code and in accordance with the procedures allowing the Debtors and/or the Successful Bidder, as applicable, to designate any Assigned Contract as either rejected or assumed on a post-closing basis.

**PLEASE TAKE FURTHER NOTICE** that, nothing herein (i) alters in any way the prepetition nature of the Assigned Contracts or the validity, priority, or amount of any claims of a counterparty to any Assigned Contract against the Debtors that may arise under such Assigned Contract, (ii) creates a postpetition contract or agreement, or (iii) elevates to administrative expense priority any claims of a counterparty to any Assigned Contract against the Debtors that may arise under such Assigned Contract.

Dated: _____, 2023

**COLE SCHOTZ P.C.**

*/s/ DRAFT* _____

Patrick J. Reilley (No. 4451)
Jack M. Dougherty (No. 6784)
Michael E. Fitzpatrick (No. 6797)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
preilley@coleschotz.com
jdougherty@coleschotz.com
mfitzpatrick@coleschotz.com
-and-
Michael D. Sirota (admitted *pro hac vice*)
David M. Bass (admitted *pro hac vice*)
Michael Trentin (admitted *pro hac vice*)
Conor D. McMullan (admitted *pro hac vice*)
Court Plaza North
25 Main Street
Hackensack, NJ 07601
Telephone: 201-489-3000
Facsimile: 201-489-1536
msirota@coleschotz.com
dbass@coleschotz.com
mtrentin@coleschotz.com
cmcmullan@coleschotz.com

*Proposed Counsel for Debtors and*
*Debtors-in-Possession*

3