**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>AMERICAN VIRTUAL CLOUD<br>TECHNOLOGIES, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-10020 (MFW)<br><br>(Jointly Administered) |

**CERTIFICATE OF PUBLICATION**

I, Shunte Jones, depose and say that I am employed by Kroll Restructuring Administration LLC ("*Kroll*"), the claims and noticing agent for the Debtors in the above-captioned chapter 11 cases.

This Certificate of Publication includes sworn statements verifying that the *Notice of Entry of Bar Date Order Establishing Deadlines for Filing of Proofs of Claim*, as conformed for publication, was published in the national edition of *The New York Times* on February 24, 2023, as described in the sworn statement attached hereto on **Exhibit A**.

Dated: February 28, 2023

　　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Shunte Jones*
　　　　　　　　　　　　　　　　　　　　　　　　　Shunte Jones

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: American Virtual Cloud Technologies, Inc. (2421), AVC Technologies USA, Inc. (8886), and Kandy Communications LLC (5853). Each Debtor's corporate headquarters and mailing address is 1720 Peachtree Road, Suite 629, Atlanta, Georgia 30309.

**Exhibit A**

Case 23-10020-MFW    Doc 167    Filed 03/04/23    Page 2 of 4

**Exhibit A**



**The New York Times Company**

620 8th Avenue
New York, NY 10018
nytimes.com

Sworn to me this 24th day of February, 2023

*Ellen Herb*

Notary Public

Ellen Herb
Notary Public, State of New York
No. 01HE6163785
Qualified in New York County
Commission Expires April 2, 2023

# PROOF OF PUBLICATION

February 24, 2023

I, Larnyce Tabron, in my capacity as a Principal Clerk of the Publisher of The New York Times, a daily newspaper of general circulation printed and published in the City, County, and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of The New York Times on the following date or dates, to wit on.

2/24/2023, NYT & NATL, pg B3

*Larnyce Tabron*

---

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

In re: AMERICAN VIRTUAL CLOUD TECHNOLOGIES, INC., et al., Debtors.[1]

Chapter 11
Case No. 23-10020 (MFW)
(Jointly Administered)
Related to D.I. 131

**NOTICE OF ENTRY OF BAR DATE ORDER ESTABLISHING DEADLINES FOR FILING OF PROOFS OF CLAIM**

PLEASE TAKE NOTICE THAT:

On January 11, 2023 (the "Petition Date"), American Virtual Cloud Technologies, Inc., and certain of its affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

On February 17, 2023, the Bankruptcy Court entered an order [D.I. 131] (the "Bar Date Order") establishing the following deadlines (the "Bar Dates") for filing Proof of Claim Forms (as defined in the Bar Date Order) with Kroll Restructuring Administration LLC ("Kroll"), the Debtors' court-appointed claims and noticing agent.

**General Bar Date.** Each person or entity (including, without limitation, each individual, partnership, joint venture, corporation, limited liability company, estate, and trust) holding or asserting a claim against the Debtors that arose (or is deemed to have arisen) on or prior to the Petition Date (including any claims arising under Bankruptcy Code section 503(b)(9) for goods received by the Debtors in the ordinary course of business within 20 days of the Petition Date) must file a Proof of Claim Form so that it is *actually received* by Kroll **on March 29, 2023 at 5:00 p.m. (Eastern Time)**.

**Governmental Bar Date.** Each "governmental unit" as that term is defined in section 101(27) of the Bankruptcy Code holding or asserting a claim against the Debtors that arose (or is deemed to have arisen) on or prior to the Petition Date must file a Proof of Claim Form so that it is *actually received* by Kroll **on or before July 10, 2023 at 5:00 p.m. (Eastern Time)**.

**Rejection Bar Date.** Each person or entity (including, without limitation, each individual, partnership, joint venture, corporation, limited liability company, estate, and trust) holding or asserting a claim for any rejection damages arising from the rejection of any unexpired lease or executory contract of a Debtor (an "Agreement") during the Chapter 11 Cases must file a Proof of Claim Form so that it is *actually received* by Kroll **on or before the later of (a) 30 days after the effective date of rejection of such Agreement as provided by an order of this Court or pursuant to a notice under procedures approved by this Court, (b) any date set by another order of this Court, or (c) the General Bar Date or the Governmental Bar Date, whichever is applicable.**

Copies of the Bar Date Order and the Proof of Claim Form may be viewed and downloaded free of charge at Kroll's website (https://cases.ra.kroll.com/AVCT) and also may be obtained by written request to Kroll at American Virtual Cloud Technologies, Inc. Claims Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232.

All Proof of Claim Forms must be filed with original signatures, be written in English, and be denominated in lawful currency of the United States. You should attach to your completed Proof of Claim Form copies of any documents on which the claim is based or an explanation as to why such documents are not available.

Proof of Claim Forms must be delivered to Kroll, so that such forms are **actually received** by Kroll by the applicable Bar Date, at the following address in the manner indicated below: **If by First-Class Mail, Hand Delivery or Overnight Mail: American Virtual Cloud Technologies, Inc., Claims Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232.**

Alternatively, claimants may submit a Proof of Claim electronically by completing the Proof of Claim Form that can be accessed at Kroll's website, **https://cases.ra.kroll.com/AVCT/EPOC-Index**. Proof of Claim Forms shall not be submitted by facsimile, telecopy, e-mail, or other electronic means (except for the Electronic Proof of Claim), and Proof of Claim Forms submitted by such means shall not be deemed timely filed.

Any person or entity that is required to file a Proof of Claim Form in the form and manner specified in the Bar Date Order and that fails to do so on or before the applicable Bar Date: (i) may be forever barred, estopped, and enjoined from asserting such claim against the Debtors, their estates, or the property of the estates, or thereafter filing a Proof of Claim Form with respect thereto in the Chapter 11 Cases; (ii) may not, with respect to such claim, be treated as a creditor of the Debtors for the purpose of voting upon any plan in these proceedings; and (iii) may not receive or be entitled to receive any payment or distribution of property from the Debtors or their successors or assigns with respect to such claim; *provided, however,* that a holder of a claim shall be able to vote upon, and receive distributions under, any plan of reorganization or liquidation in these Chapter 11 Cases to the extent, and in such amount, as any undisputed, noncontingent, and liquidated claims identified in the schedules on behalf of such holder.

Questions concerning this Notice should be directed to Kroll at 833-208-0600, or AVCTInfo@ra.kroll.com. Please note that Kroll's staff is not permitted to give legal advice.

February 17, 2023, COLE SCHOTZ P.C., Patrick J. Reilley, Jack M. Dougherty, Michael E. Fitzpatrick, 500 Delaware Avenue, Suite 1410, Wilmington, DE 19801 -and- Michael D. Sirota, David M. Bass, Michael Trentin, Conor D. McMullan, Court Plaza North, 25 Main Street, Hackensack, NJ 07601, *Counsel for Debtors and Debtors-in-Possession*

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: American Virtual Cloud Technologies, Inc. (2421), AVCtechnologies USA, Inc. (8886), and Kandy Communications LLC (5853). The Debtors' corporate headquarters is 1720 Peachtree Road, Suite 629, Atlanta, Georgia 30309.

OFIR BERMAN FOR THE NEW YORK TIMES

"I invest in entrepreneurs, and if those entrepreneurs want to set up somewhere else, that's fine," said Adam Fisher of Bessemer Venture Partners.

OFIR BERMAN FOR THE NEW YORK TIMES

Above, Yanki Margolit. Left, Tel Aviv. The atmosphere in Israel has persuaded Mr. Margolit to launch his newest venture, focused on fighting climate change, elsewhere.

LAURA BOUSHNAK FOR THE NEW YORK TIMES

## Tech Leaders in Israel Are Eyeing the Exits Ahead of an Overhaul

FROM FIRST BUSINESS PAGE

collapse."

More quietly, people like Mr. Margalit are reappraising what it means to operate here and deciding that if the government retools the judiciary, it is time to leave.

"It's all about risk management and the risk is to the brand that is Israel," said Assaf Rappaport, the chief executive and co-founder of Wiz, a cloud security company worth $6 billion. "It took a lot of time to build this brand, and today every company in the world can trust Israel as a partner in their cyberdefense. These reforms will put all that in question."

The office of Israel's minister of finance, Bezalel Smotrich, declined to comment. In a mid-February statement, he said claims that the reforms harmed democracy were part of a "scaremongering campaign."

While the judicial changes will affect all Israeli businesses, the tech sector's reaction is of greatest concern because it provides so much of the economy's horsepower.

Some 54 percent of Israel's exports are high-tech products and services, according to the Israel Innovation Authority, a support arm of the government. Israelis have created more than 90 so-called unicorns — privately held companies valued at more than $1 billion — including Wix.com, which offers cloud-based web services; the gaming company Moon Active; and the financial services company eToro.

Losing top-level earners and the corporations they run would have a devastating impact in a country where 81 percent of tax revenue comes from just 20 percent of the population.

The new government, formed in late December, includes members of the ultra-Orthodox and ultranationalist political parties. Both rely heavily on government subsidies: the former because few of its members participate in the labor market, and the latter because it wants funds to sustain settlements in the West Bank.

Which is why Eran Yashiv, a professor of economics at Tel Aviv University, sees judicial reform as a kind of resource grab.

"It's a redistribution from the high-tech sector to religious and nationalist minorities," he said. "And it would turn Israel into an illiberal country."

In the Israeli parliamentary system, the administration usually controls the legislature, so gaining more sway over the courts would hand Mr. Netanyahu and his ministers influence over all three branches of government and far fewer checks on his powers.

Early this month, a group of 56 American economists sent a letter to Mr. Netanyahu arguing that his government's judicial proposals "would adversely affect the Israeli economy by weakening the rule of law and thereby moving Israel in the direction of Hungary and Poland."

"There's a huge amount of research in the last 25 years that shows that stability and the rule of law support better economic growth," Zvi Eckstein, a former deputy governor of the Bank of Israel, said in an interview. "As economists, we worry that reducing property rights of individuals and corporations will introduce uncertainty, and that a weaker judiciary will increase the likelihood of government corruption. Both of those two things will cause the economy to slow substantially."

If Israel's democratic institutions are undermined, investors and executives contended, it will keep blue-chip customers and investors at bay. And if a company has difficulty attracting customers, it will have the same problem with talent.

Many Israeli-led companies, including Wiz, are already based in the United States and keep a subsidiary in Israel because that makes it easier to appeal to investors and employees. Israeli tech executives who live in the United States often return when their children reach school age so they can acclimate to Israeli culture and serve in the military.

"We used to talk about going back in 2024, and now it's like let's not talk about it, which is a big deal for us," said Nadav Weizmann, an entrepreneur who is launching his third company, Cardinal, a tool for product managers, in Austin, Texas. "For a start-up founder, it's now a lot harder to imagine moving back to Israel, because you don't know what it will look like."

If the government moves ahead with its judicial plans, the outflow of Israeli tech leaders will surge and the inflow will subside, said Adam Fisher, a co-founder of Bessemer Venture Partners, which has backed more than 30 start-ups in the country. Money from Bessemer and other venture capital firms — 90 percent of all investment in Israeli tech comes from foreign sources — will simply follow the entrepreneurs.

"When I invest in Israel, I'm not really investing in the Israeli economy; I'm not looking at the shekel or railroad infrastructure or G.D.P. growth," Mr. Fisher said. "I invest in entrepreneurs, and if those entrepreneurs want to set up somewhere else, that's fine."

Mr. Smotrich and other members of the coalition have said they are merely redressing an imbalance that gives the Supreme Court too much power.

In a Fox News interview this month, Mr. Netanyahu said, "We probably have the most activist judicial court on the planet."

Since 2020, Mr. Netanyahu has been on trial for bribery, fraud and breach-of-trust charges, which he has denied. His interest in revamping the court was deemed enough of a conflict that this month, the country's attorney general ordered him not to get involved with the effort. Mr. Netanyahu's office called the demand "unacceptable."

That a government led by Mr. Netanyahu would imperil Israel's tech miracle bewilders many because he has long been one of the sector's most vocal champions. But a flight of capital has already begun.

"From my clients I'm hearing concrete instructions to mobilize money out of Israel, to Switzerland or London," said Eran Goren, a co-founder of Fidelis Family Office, which manages the money of wealthy Israelis. "We work closely with private banking departments of big banks, and they say it's from every direction — people are just pulling money out."

A withering tech industry would make Israel poorer, weaker and more religious, Mr. Yashiv said. That ought to worry anyone concerned about the stability of the Middle East, he added.

"Weaker states tend to be more aggressive, and a weaker Israel will be a more aggressive Israel," he said.

Few of Israel's tech leaders said they would depart happily. Even though it pained him, Mr. Margalit is weighing the pluses and minuses of cities like London, Paris and New York.

"If they pass this legislation," he said, "what are my options?"

## Flight Attendant Unions Split on Proposed Merger Between JetBlue and Spirit

**By NIRAJ CHOKSHI**

Unions that represent workers at JetBlue Airways and Spirit Airlines are divided on the proposed merger of the two companies, with one union throwing its support behind the deal and another asking federal officials to block it.

In a letter on Thursday, the Transport Workers Union, which represents 6,800 JetBlue flight attendants, asked Attorney General Merrick B. Garland and Transportation Secretary Pete Buttigieg to prevent the merger. The union said it feared that JetBlue, which would acquire Spirit, had no intention of honoring worker contracts afterward, adding it was concerned that the deal would violate antitrust laws and undermine competition.

Two days earlier, the Association of Flight Attendants-C.W.A., which represents 5,600 flight attendants at Spirit, gave the deal its blessing. The union's leaders approved a tentative agreement with Spirit that includes higher wages and quality-of-life improvements, while also backing the merger. The union's rank-and-file members have yet to vote on that agreement.

The Justice Department is expected to decide soon whether to sue to prevent the merger. Spirit shareholders approved the deal in October, and the two airlines have complied with the department's requests for additional information, most recently in December. As a result, Spirit's chief executive, Ted Christie, told investor analysts and reporters in early February that he expected a decision on the suit "in the next 30 days or so."

Under President Biden, the Justice Department has taken an aggressive approach to antitrust concerns, investigating the practices of large companies, suing to prevent big corporate mergers and even suing to prevent a partnership between JetBlue and American Airlines in Boston and New York.

The agency is expected to at least secure concessions from Spirit and JetBlue before the acquisition proceeds, if not sue to block it. JetBlue has offered to divest Spirit's assets in some markets, including Boston, New York and Fort Lauderdale, Fla. Opponents of the merger have also called on the Transportation Department to block the transfer of operating certificates between the two airlines.

In its letter on Thursday, John Samuelsen, the international president of the Transport Workers Union, urged the Justice and Transportation Departments "to take the necessary steps to prevent these airlines from combining until the leadership of the proposed carrier demonstrates their willingness to operate in good faith with their workers and the passengers."

The letter asserted that should the acquisition be carried out, JetBlue management "has the intent to not fully honor" union agreements in place with JetBlue and Spirit workers.

JetBlue and the union negotiated their first workplace contract more than a year ago, but the union said the airline had failed to adhere to the provisions, including new rules on scheduling flight attendants.

In a message to the airline's flight attendants on Thursday night, JetBlue's chief executive, Robin Hayes, said the company was working closely with the Transport Workers Union to address concerns over the contract and the merger.

He also said that the airline planned to retain all of JetBlue's and Spirit's employee bases, where workers typically start and end their shifts, and that the airline's longstanding commitment to no furloughs "will continue to guide our decisions."

The Association of Flight Attendants-C.W.A., for its part, said it would support the merger after securing improvements and protections from management, include raises now and over the next

*The Justice Dept. will soon decide whether to try to block a deal.*

two years, scheduling improvements for flight attendants and a promise from JetBlue to protect the seniority that workers at Spirit have earned.

"We agree with skeptics that consolidation has accrued extraordinary power to a few airlines," Sara Nelson, the union's president, said in a letter sent on Tuesday to top lawmakers in Washington. "However, this merger will help to correct that imbalance. The JetBlue-Spirit merger adds competition to the airline industry that creates more power for workers along with choice that benefits consumers."

In expectation that the merger will proceed, JetBlue has started making payments to Spirit's shareholders, as agreed to under the deal. That includes $272 million paid in the last three months of 2022, with another $130 million in monthly payments planned for this year. If regulators thwart the deal, JetBlue has agreed to pay Spirit $70 million and Spirit's shareholders $400 million.

JetBlue's Mr. Hayes told investor analysts and reporters on a call last month that even if a suit was filed, his airline expected to close the transaction early next year, provided that an attempt to block the merger failed.

In the past, it has taken 12 to 18 months to integrate airlines after a merger closes. To hasten that process, Mr. Hayes said, JetBlue has started to plot out the decisions that it would need to make.

"There's a lot of wood to chop, but I couldn't be more pleased with the start that we've made," he said. "The partnership between the JetBlue and Spirit teams has just been excellent."

The Transport Workers Union, some progressive lawmakers and consumer groups have expressed concern that the merger would further concentrate power in a heavily consolidated industry. They also worry that the elimination of Spirit would remove a competitive force that had acted to lower fares in the markets where it flew, harming consumers and workers.

After the sale, JetBlue would gain a majority market share on more than a dozen routes where neither it nor Spirit previously dominated, according to a New York Times analysis of a year's worth of flight schedules from Cirium, an aviation data provider. Most of those routes start or end in Florida, where each airline has a strong presence.

JetBlue and Spirit have argued the opposite, that the merger would help increase competition. Combined, the airlines would have about 10 percent of the U.S. airline market, still well behind the 15 percent share of United Airlines, the fourth-largest carrier. The next-largest airline, Alaska Airlines, has 6 percent.

The acquisition would help JetBlue quickly expand its network, a goal it has held since at least 2016, when it lost a bidding war for Virgin America to Alaska. If the Spirit acquisition goes through, JetBlue will retain its name, its New York headquarters and Mr. Hayes in command. Spirit's planes would be converted to match JetBlue's in appearance and seat configuration, adding legroom.

Even if regulators allow the deal, combining airlines can be difficult, requiring integration of computer systems, aircraft fleets, company cultures and unions with different workplace rules.



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:                                          Chapter 11
AMERICAN VIRTUAL CLOUD            Case No. 23-10020 (MFW)
TECHNOLOGIES, INC., et al.,            (Jointly Administered)
Debtors.¹                                Related to D.I. 131

NOTICE OF ENTRY OF BAR DATE ORDER ESTABLISHING
DEADLINES FOR FILING OF PROOFS OF CLAIM

PLEASE TAKE NOTICE THAT:

On January 11, 2023 (the "Petition Date"), American Virtual Cloud Technologies, Inc., and certain of its affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

On February 17, 2023, the Bankruptcy Court entered an order (D.I. 131) (the "Bar Date Order") establishing the following deadlines (the "Bar Dates") for filing Proof of Claim Forms (as defined in the Bar Date Order) with Kroll Restructuring Administration LLC ("Kroll"), the Debtors' court-appointed claims and noticing agent.

General Bar Date. Each person or entity (including, without limitation, each individual, partnership, joint venture, corporation, limited liability company, estate, and trust) holding or asserting a claim against the Debtors that arose (or is deemed to have arisen) on or prior to the Petition Date (including any claims arising under Bankruptcy Code section 503(b)(9) for goods received by the Debtors in the ordinary course of business within 20 days of the Petition Date) must file a Proof of Claim Form so that it is actually received by Kroll on March 29, 2023 at 5:00 p.m. (Eastern Time).

Governmental Bar Date. Each "governmental unit" as that term is defined in section 101(27) of the Bankruptcy Code holding or asserting a claim against the Debtors that arose (or is deemed to have arisen) on or prior to the Petition Date must file a Proof of Claim Form so that it is actually received by Kroll on or before July 10, 2023 at 5:00 p.m. (Eastern Time).

Rejection Bar Date. Each person or entity (including, without limitation, each individual, partnership, joint venture, corporation, limited liability company, estate, and trust) holding or asserting a claim for any rejection damages arising from the rejection of any unexpired lease or executory contract of a Debtor (an "Agreement") during the Chapter 11 Cases must file a Proof of Claim Form so that it is actually received by Kroll on or before the later of (a) 30 days after the effective date of rejection of such Agreement as provided by an order of this Court or pursuant to a notice under procedures approved by this Court, (b) any date set by another order of this Court, or (c) the General Bar Date or the Governmental Bar Date, whichever is applicable.

Copies of the Bar Date Order and the Proof of Claim Form may be viewed and downloaded free of charge at Kroll's website (https://cases.ra.kroll.com/AVCT) and also may be obtained by written request to Kroll

February 17, 2023, COLE SCHOTZ P.C., Patrick J. Reilley, Jack M. Dougherty, Michael E. Fitzpatrick, 500 Delaware Avenue, Suite 1410, Wilmington, DE 19801 -and- Michael D. Sirota, David M. Bass, Michael Trentin, Conor D. McMullan, Court Plaza North, 25 Main Street, Hackensack, NJ 07601, Counsel for Debtors and Debtors-in-Possession

at American Virtual Cloud Technologies, Inc. Claims Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232.

All Proof of Claim Forms must be filed with original signatures, be written in English, and be denominated in lawful currency of the United States. You should attach to your completed Proof of Claim Form copies of any documents on which the claim is based or an explanation as to why such documents are not available.

Proof of Claim Forms must be delivered to Kroll, so that such forms are actually received by Kroll by the applicable Bar Date, at the following address in the manner indicated below: If by First-Class Mail, Hand Delivery or Overnight Mail: American Virtual Cloud Technologies, Inc., Claims Processing Center, c/o Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, NY 11232.

Alternatively, claimants may submit a Proof of Claim electronically by completing the Proof of Claim Form that can be accessed at Kroll's website, https://cases.ra.kroll.com/AVCT/EPOC-Index. Proof of Claim Forms shall not be submitted by facsimile, telecopy, e-mail, or other electronic means (except for the Electronic Proof of Claim), and Proof of Claim Forms submitted by such means shall not be deemed timely filed.

Any person or entity that is required to file a Proof of Claim Form in the form and manner specified in the Bar Date Order and that fails to do so on or before the applicable Bar Date: (i) may be forever barred, estopped, and enjoined from asserting such claim against the Debtors, their estates, or the property of the estates, or thereafter filing a Proof of Claim Form with respect thereto in the Chapter 11 Cases; (ii) may not, with respect to such claim, be treated as a creditor for the purpose of voting upon any plan in these proceedings; and (iii) may not receive or be entitled to receive any payment or distribution of property from the Debtors or their successors or assigns with respect to such claim; provided, however, that a holder of a claim shall be able to vote upon, and receive distributions under, any plan of reorganization or liquidation in these Chapter 11 Cases to the extent, and in such amount, as any undisputed, noncontingent, and liquidated claims are identified in the schedules on behalf of such holder.

Questions concerning this Notice should be directed to Kroll at 833-208-0600, or AVCTInfo@ra.kroll.com. Please note that Kroll's staff is not permitted to give legal advice.

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: American Virtual Cloud Technologies, Inc. (2421), AVCtechnologies USA, Inc. (8886), and Kandy Communications LLC (5853). The Debtors' corporate headquarters is 1720 Peachtree Road, Suite 629, Atlanta, Georgia 30309.